RECEIVED
USDC CLERK, CHARLESTON, SC
2016 NOV 28  AM 8:35

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| United States of America, ) | Criminal No. 2:15-875-RMG |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Jamison Knowles. ) | |

This matter is before the Court on Defendant's second motion to suppress. For the reasons set forth below, the Court grants the motion and suppresses statements Defendant made to investigators during the execution of a search warrant at Defendant's residence on November 10, 2015.

I.  **Background**

Defendant is charged with possession of child pornography, in violation of 18 U.S.C. § 2252A. The charge arises from the Government's investigation of a website known as "Playpen," a global forum for distributing child pornography, which used "Tor" software to avoid detection by law enforcement. (Dkt. No. 59 at 1.) Tor prevents tracing internet communications to the actual user. To overcome that obstacle, FBI agents utilized a Network Investigative Technique ("NIT") to identify Playpen users. Using information obtained from the NIT, FBI agents connected Defendant's home address to a Playpen username used to access child pornography.

Agents then obtained a warrant to search Defendant's home, which they executed on November 10, 2015. (Dkt. No. 78 at 43:15–19.) Eleven law enforcement officers—seven FBI agents, a SLED agent, a Charleston County detective, and two Dorchester County Sheriff's Deputies—executed the warrant at Defendant's residence from 8:05 AM to 11:50 AM. (Dkt. No. 73 at 3–4; Dkt. No. 78 at 19:8–20:1.) FBI Agent Neil Ulrich led the warrant execution. (Dkt. No.

78 at 6:24–25.) Defendant, 21 years old at the time, lives at home with his parents Ken and Sherrolyn Knowles. (*Id.* at 48:6–15.) Officers removed all members of the Knowles family from their home—still dressed in sleeping attire—while the premises were searched for dangers (a "protective sweep"). (Dkt. No. 78 at 23:11–26:1.) The Knowles family was not allowed to leave the immediate front of the house. (*Id.* at 25:15–27:11.) Defendant was frisked. (*Id.* at 54:24–55:3, 69:16–23.) Weapons were drawn during the protective sweep, but no weapons were drawn in the presence of the Knowles family. (*Id.* at 9:12–10:12, 69:24–70:2.) After the protective sweep, each family member was taken to a separate room and questioned. (*Id.* at 13:10–14:2.)

Defendant was questioned by two FBI agents, Gerrick Munoz and Clinton Pierce, in the living room; the mother was questioned a bedroom; the father was questioned in the dining room. (*Id.* at 43:2–4, 45:17–46:5.) No *Miranda* warnings were provided, and Defendant was told that he was not under arrest or in custody. (*Id.* at 3:15–17, 46:16–47:4.) When Defendant asked to be allowed to take his prescribed medications, however, Agent Munoz asked Agent Ulrich to decide if Defendant should be allowed to take his medication. (*Id.* at 38:12–15.) Agent Ulrich then escorted Defendant from the living room to the kitchen, where he retrieved Defendant's medicine from a cabinet and, after inspecting the medicine bottles, allowed Defendant to take his medication. (*Id.* at 37:3–38:1.) Defendant was then escorted back to the living room. (*Id.*) He was never permitted to be outside of law enforcement presence at any time. (*Id.* at 38:2–4.)

The "gravamen of the Defendant's statement" that he seeks to suppress is "that the child pornography on the computer was his and he described his actions in obtaining the child pornography." (*See* Dkt. No. 68 at 3–4.) When interviewed, Defendant told agents that the child pornography on the computer seized under the search warrant was his, and he described to agents how he obtained the child pornography. (Dkt. No. 78 at 49:2–50:14.)   On December 8, 2015,

Defendant was indicted for possession of child pornography involving a prepubescent minor. (Dkt. No. 1.) On August 18, 2016, Defendant moved to suppress evidence seized pursuant to the search warrant of February 20, 2015, which authorized use of the NIT. (Dkt. No. 47.) The Court held a hearing on the motion on September 6, 2016. On September 8, 2016, Defendant filed a supplemental motion to suppress. (Dkt. No. 58.) That supplemental motion includes as Part II "Additional Grounds for Suppression," a separate motion seeking, pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), to suppress statements Defendant made to investigators during the November 10, 2015 search of his residence. The Court now addresses that second suppression motion.

## II.  Legal Standard

"Where a defendant seeks to suppress a statement under *Miranda v. Arizona*, 384 U.S. 436 (1966), the government bears the burden of establishing by a preponderance of the evidence that the statement was not the product of custodial interrogation conducted in the absence of *Miranda* warnings." *United States v. Hunter*, 63 F. Supp. 3d 614, 619 (E.D. Va. 2014) (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)). "[T]he Fourth Circuit has explained that a person is deemed to be 'in custody' if under the totality of the circumstances, 'a reasonable person would [not] feel free to decline the officers' requests or otherwise terminate the encounter.'" *United States v. Doan*, --- F. Supp. 3d ----, 2016 WL 1706155, at *4 (E.D. Va. Apr. 27, 2016) (quoting *United States v. Jamison*, 509 F.3d 623, 628 (4th Cir. 2007)). "Facts relevant to this objective custodial inquiry include, but are not limited to: 'the time, place and purpose of the encounter, the words used by the officer, the officer's tone of voice and general demeanor, the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant. . . . Also pertinent are the suspect's isolation and separation from family ... and physical restrictions[.]" *United States v. Freeman*, 61 F. Supp. 3d 534, 536–37 (E.D. Va. 2014) (quoting *United States v. Hashime*, 734 F.3d 278, 283 (4th Cir. 2013)). The Government

must meet its burden by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

## III.   Discussion

The Government concedes Defendant was never Mirandized. (Dkt. No. 78 at 3:15–17.) The only issue therefore is whether he was in custody when he made inculpatory statements. That is not a close question. The Court finds, for the reasons described below and by a preponderance of the evidence, that a reasonable person under the circumstances in which Defendant made those statements would not feel free to terminate his encounter with the FBI. The factors provided by the Fourth Circuit to guide the custodial inquiry require suppression when applied to the statements Defendant made during the November 10, 2015 search of his home. *See Hashime*, 734 F.3d at 283 (providing factors).

Defendant, still dressed in sleeping attire, was first removed from his home and then held in a room within his home by persons who forcibly intruded into the home. (Dkt. No. 78 at 23:11–26:1.) The only purpose of the interview was to obtain evidence against Defendant. Indeed, Agent Munoz arrived at the residence with the specific assignment of interviewing Defendant to obtain evidence. (*Id.* at 64:25–65:9.) Agent Ulrich—the lead agent—was assigned to interview Defendant's father because Defendant's father—a known sex offender—was the initial target of their investigation. (*Id.*) Defendant was held alone with two agents for some time. Defendant claims he was interviewed for two to three hours. (*Id.* at 83:15–20.) Agent Ulrich cannot recall how long the interview lasted. (Id. at 18:17–24.) A preponderance of the evidence suggests the interview was well over one hour long. (*See, e.g.*, Dkt. No. 73 at 3–4 (warrant execution lasted almost four hours); *id.* at 5–7 (bulleting 31 items Defendant discussed with the FBI during the interview).) The custodial inquiry factor "the time, place and purpose of the encounter" therefore indicates Defendant was in custody. *See Hashime*, 734 F.3d at 283.

As noted, the warrant was executed by eleven armed officers. (Dkt. No. 78 at 19:8–20:1.) The search began with the removal of the Knowles family from their home while a "protective sweep" of the residence was conducted, during which time the Knowles family members were themselves frisked. (Dkt. No. 78 at 23:11–27:11; 54:24–55:3, 69:16–23.) The custodial inquiry factor "the presence of multiple officers, the potential display of a weapon by an officer, and whether there was any physical contact between the officer and the defendant" therefore indicates Defendant was in custody. *See Hashime*, 734 F.3d at 283.

Defendant was separated from his family and held in isolation while interviewed for a period exceeding one hour. He was not permitted to leave the presence of the FBI even to take his prescribed medicine. (Dkt. No. 78 at 37:3–38:15.) The custodial inquiry factor "isolation and separation from family ... and physical restrictions" therefore indicates Defendant was in custody. *See Hashime*, 734 F.3d at 283.

The Court recognizes that the FBI agents interviewing Defendant did not view him as the target of any investigation when they began to interview him. (Dkt. No. 78 at 49:2–50:5.) That mistake is not relevant to the custodial inquiry. *United States v. Parker*, 262 F.3d 415, 419 (4th Cir. 2001) ("Custody determinations do not depend on the subjective views of either the interrogating law enforcement officers or of the person being questioned, but depend instead [on] the objective circumstances of the interrogation."); *see also Stansbury v. California*, 511 U.S. 318, 325 (1994) (holding an officer's beliefs about whether a person being questioned is a criminal suspect are relevant only if they are conveyed to the person being questioned and only to the extent they would affect a reasonable person's beliefs regarding his freedom of action). Regardless, when formulating its plans to interview members of the Knowles family, the FBI should have understood

that any adult male residing at the Knowles residence could have criminal liability regarding child pornography traced to the Knowles residence.

Finally, the Court does not question the propriety of the manner in which law enforcement officers executed the search warrant at the Knowles residence. Indeed, the Court finds that the warrant was executed in a highly professional and altogether proper manner. But those proper warrant-execution procedures would cause a person in Defendant's position reasonably to believe that he was in custody. Agent Ulrich, the now-retired FBI agent who led the search warrant execution, admitted that a person in Defendant's position might reasonably believe that he was in custody. (Dkt. No. 78 at 39:2–40:2.) The Court commends Agent Ulrich's rectitude.

The Court finds that a reasonable person in Defendant's situation would not believe that he was able to terminate the encounter. Defendant's inculpatory statement to the FBI during the execution of the search warrant at his home therefore is a custodial statement. Because Defendant was not Mirandized when he made that inculpatory, custodial statement, it must be suppressed. *See Stansbury*, 511 U.S. at 322.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's second motion to suppress (Dkt. No. 58).

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

November 28 2016
Charleston, South Carolina